

## ORDERED in the Southern District of Florida on July 21, 2010.

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:

TRANSCAPITAL FINANCIAL
CORPORATION,

      Debtor.
_____/

Case No. 06-12644-BKC-AJC

Chapter 11

In re:

AMERICA CAPITAL
CORPORATION,

      Debtor.
_____/

Case No. 06-12645-BKC-AJC

Chapter 11

### ORDER ALLOWING CLAIMS OF SCOTT JAY FEDER, PA. AND OVERRULING OBJECTIONS TO CLAIMS

THIS CAUSE came before this Court for evidentiary hearing on January 28, 2010, upon the Liquidating Agent's Amended Objections to Claims #64 and #20 filed by Scott Jay Feder, P.A. ("Feder") in the above-referenced cases.

Feder seeks payment of attorney fees of $419,800 for legal services provided pre-petition pursuant to a written fee agreement with the Debtor, America Capital Corporation ("AMCAP")

Case No. 06-12644 AJC
Case No. 06-12645 AJC

which fees were guaranteed in writing by AMCAP's subsidiary, Debtor Transcapital Financial Corporation ("TFC").

The Liquidating Agent objected to the claims as being in excess of the reasonable value of the services provided and argued that TFC received no consideration or benefit for its guaranty. At the hearing, the Liquidating Agent advised the Court that it was stipulating that Feder's hourly rate, hours worked, and activities performed were reasonable. The Liquidating Agent focused its objection to claims on the contingency multiplier of 2.5, arguing it was excessive and that TFC's guaranty was not supported by any consideration.

Feder presented three witnesses: Steven Cook, the principal managing officer of both Debtors; Peter Russin, Esq., as an expert witness; and himself. The Liquidating Agent presented no witnesses.

The Court received full argument from counsel for Feder, counsel for the Liquidating Agent, and counsel for Sun Trust and requested post-hearing submissions from the parties. In the post-hearing submissions, the Liquidating Agent appears to concede the issue of lack of consideration as a defense to Feder's guaranty claim against TFC. The Liquidating Agent, without formally withdrawing its objection on that basis, suggests that the claims be allowed in both the TFC and ACC cases. However, the Liquidating Agent argues the claims should be allowed only in the lodestar amount. Therefore, it appears the only issue remaining is the reasonable value of the services provided.

Upon the evidence presented, and upon consideration of the Liquidating Agent's proposed order and *Scott Jay Feder, P.A.'s Memorandum in Response to the Liquidating Agent's*

Case No. 06-12644 AJC
Case No. 06-12645 AJC

*Proposed Order on its Amended Objections to Claim Number 64 and 20 Filed by Scott Jay Feder, P.A.*, the Court makes the following findings of fact and conclusions of law:

1. AMCAP is the parent company of TFC.

2. Cook testified that in April of 2005, AMCAP approached Feder requesting he represent the company in multiple pending litigations: AMCAP vs. Robert Marlin, 11th Circuit in and for Miami-Dade County, Florida, Case No. 04-9765 CA 01; Robert Marlin vs. AMCAP, Jack Burstein and Steven Cook, 11th Circuit in and for Miami-Dade County, Florida, Case No. 05-7103 CA 01; and, Suntrust vs. AMCAP, 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 97-5477 CA 01.  AMCAP's prior counsel, Adorno & Yoss, P.A., had recently withdrawn believing it might have a conflict of interest.  At that time, neither AMCAP nor TFC were operating and neither had any liquid assets.  The sole asset of any significance was a lawsuit pending against the United States of America, Case No. 95-523 C, U.S. Court of Federal Claims, (the "Goodwill Litigation").  Cook testified that at the time Feder was considering being hired, Cook advised Feder that the trial court in the Goodwill litigation had already made two significant rulings: AMCAP had not suffered any legal damages so its claim was lost; TFC did suffer legal damage, but whether it was entitled to any judgment would depend on the amount of its actual damages which were still to be determined and whether the Defendant U.S.A.´s set-offs completely erased all of TFC´s damages.

3. As to fee agreements, Cook testified that since the companies stopped operating, in every instance where the companies had sought representation, every law firm required either that both AMCAP and TFC execute the retainer agreement, or alternatively that TFC execute a written guarantee of the fee agreement AMCAP was entering into with the respective law firm.

3

Case No. 06-12644 AJC
Case No. 06-12645 AJC

The firms that were eventually retained, Schantz Schatzman Aaronson and Pearlman, P.A.; Adorno & Yoss, P.A.; Kluger Peretz Kaplan and Berlin, P.L.; and Cooper & Kirk, P.A., all agreed to perform legal services on a contingent basis with this requirement that TFC be directly responsible for the fees or be a guarantor of the fees.

4. Cook testified that at the time Feder was being asked to undertake this legal representation, it was known that even if the Goodwill litigation produced a financial result, it was very likely that both AMCAP and TFC would need to file for protection under the jurisdiction of the U.S. Bankruptcy Court.

5. Feder testified that he was a sole practitioner and only offered to undertake this legal representation if TFC guaranteed payment. He agreed to accept a purely contingent fee agreement understanding that neither AMCAP nor TFC was able to pay in any other fashion. Feder explained that under the circumstances, he believed that the prospect of being paid was extremely risky. He also knew that payment, if any, would not occur for many years. Accordingly, Feder accepted the following arrangement whereby fees would be calculated by multiplying the hours worked by the hourly rate of $400 per hour enhanced by a multiplier of 2.5. Cook testified that this multiplier was equal to the lowest one offered by any law firm willing to consider representing either AMCAP or TFC.

6. Peter Russin testified as an expert witness.[1] Russin testified that in Florida, multipliers range from 1.5 to 5.0 for contingent representation in commercial matters depending on the amount of risk of non-payment, the time frame in which a firm may have to wait for the possibility of payment, and the type of case involved. *Florida Patient's Compensation Fund v.*

---

[1] The Court notes that it is capable of making determinations regarding fees, in accordance with applicable law, without expert testimony.

Case No. 06-12644 AJC<br>Case No. 06-12645 AJC

*Rowe*, 472 So. 2d 1145 (Fla. 1985), as modified by *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990) and *Kuhnlein v. Department of Revenue*, 662 S. 2d 309 (Fla. 1995) See *Johnson v. Ga. Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974).

7. Feder testified that he would only undertake this representation if TFC guaranteed the fee agreement because Feder knew that TFC was the only company of the two with any prospect of ever obtaining any financial ability to pay his fees. TFC's guaranty was a material inducement without which Feder would not have undertaken the representation. Cook testified that before TFC entered into this specific guaranty, TFC's independent counsel at the time, Kluger Peretz, reviewed the issue, approved it, and then drafted the guaranty which TFC executed.

8. The relevant legal market required a contingent risk multiplier for this representation and the multiplier utilized of 2.5 was appropriate given the amount of risk of never being paid or, in the event of a chance of being paid, the knowledge that it would be many years before that would ever occur.

9. Thereafter, Feder began performing legal services for AMCAP and ultimately for TFC also. Feder appeared in the three state court cases and provided 419.80 hours of services on an expedited basis in the 13 months following his retention until the companies filed for bankruptcy protection in June of 2006. Cook and Feder testified that he was successful in these representations. Feder was able to disqualify the adverse party's counsel (which ruling was affirmed on appeal while these bankruptcy proceedings were pending). As part of the services rendered, Feder also represented both AMCAP and TFC at a meeting, and in discussions, with SunTrust Bank, indenture trustee for the largest class of AMCAP creditors. Among other

matters, Feder helped negotiate some of the terms and the timing of these Debtors' bankruptcy filings.

## Analysis

The Court believes the foregoing justifies an award of the fees requested. The Court has considered the Liquidating Agent's objections in opposition but rejects same. First, "contracts or agreements for attorney's fees between attorney and client will ordinarily **be enforceable according to the terms of such contracts or agreements,** unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating the Florida Bar, prohibited by this rule, or clearly excessive as defined by this Rule." Rules Regulating the Florida Bar, 4-1.5(d) (emphasis added). "[F]ees that provide for a bonus or additional fees that are not otherwise prohibited under the Rules Regulating the Florida Bar can be effective tools for structuring fees." Comment to Rule 4-1.5, Rules Regulating the Florida Bar (2009). Moreover, Feder's requested fee is not a contingency fee based on the outcome of the case, but rather payment is contingent upon the receipt of funding by the Debtor(s). At the time the agreement was executed, both AMCAP and TFC were unable to pay any fees. Accordingly, because of the risk of non-payment, this formula was used to enhance the attorney's fee.

In addition, the Court rejects the Liquidating Agent's argument that Feder's fees under the retention contract should be reduced. The Liquidating Agent argues that the contract was rejected when the Court, three years post-petition, entered its order authorizing the rejection of all of AMCAP'S contracts, thereby limiting Feder's fees for services already performed on a quantum meruit basis. The Liquidating Agent further argues that quantum meruit is determined by the hours worked times the hourly rate (the lodestar). However, the fee contract was not

Case No. 06-12644 AJC
Case No. 06-12645 AJC

determined to be executory at that time the Court authorized rejection. Upon Debtors' filing of their petitions, Feder was no longer authorized to perform services and had otherwise fully performed all services to that point in time. *In re Paul E. Nelson, P.A.,* 203 BR 756 (Bankr. M.D.Fla. 1996). Furthermore, the Florida Supreme Court has held that quantum meruit means more than hours times hourly rate, it means the **totality of the circumstances**:

> In computing the reasonable value of the discharged attorney's services, the trial court can consider the totality of the circumstances surrounding the professional relationship between the attorney and client. Factors such as time, the recovery sought, the skill demanded, the results obtained, and **the attorney-client contract itself will necessarily be relevant considerations**. *Searcy Denney et al vs. Poletz,* 652 So. 2d 366, 371 (Fla. 1995)(emphasis added).

When the dispute is between a client and the client's attorney, the lodestar amount is **not** the only relevant or controlling factor, rather it is merely a starting point.

> …while the time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper quantum meruit award, **the court must consider all relevant factors surrounding the professional relationship to ensure that the award is fair to both the attorney and client.** \*   \*   \*. Application of the factors set forth in **Rule Regulating The Florida Bar 4-1.5(b)**, may provide a good starting point. However, because the factors relevant to the determination of the reasonable value of services rendered will vary from case to case, the court is not limited to consideration of the *Rowe* factors. The court must consider any other factors surrounding the professional relationship that would assist the court in fashioning an award that is fair to both the attorney and client. **For example, the fee agreement itself,** the reason the attorney was discharged, actions taken by the attorney or client before or after discharge, and the benefit actually conferred on the client may be relevant to that determination. The determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount to be awarded are matters within the sound discretion of the trial court. *Id.*

The Bar rules state this exact point. "In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee

7

higher or lower than that which would result from application of only the time and rate factors." Rules Regulating the Florida Bar, 4-1.5(c).

Applied to the facts at bar, this fee agreement, negotiated by a sophisticated client, provided for an appropriate enhancement given the high risk that no fees would ever be paid. As to the reasonableness of the multiplier used, the Florida Supreme Court specifically recognized that an enhancement using such a multiplier is appropriate as it will "ensure that the enhancement is not so substantial that the fees become excessive and thereby unreasonable." *Kuhnlein vs. Dep't of Rev.,* 662 So.2d 309, 314 (Fla. 1995). Highlighting the appropriateness of the fee formula is the undisputed testimony from the Debtor's former officer, Steven Cook, as confirmed by the expert witness, Peter Russin, that the relevant legal market would not have provided legal service to the client in the absence of this type of fee.

Upon the foregoing findings of fact and conclusions of law, it is

ORDERED and ADJUDGED as follows:

1.     The Liquidating Agent's objections are OVERRULED and Feder's Claims #64 and #20 are ALLOWED.

2.     Feder's Claim #20 in the Estate of AMCAP is allowed in the full amount of $419,800; and, Claim #64 in the Estate of TFC is allowed in the amount of $419,800, but shall be paid only to the extent Feder's Claim #20 in the Estate of AMCAP is not satisfied by the Liquidating Agent's distributions from the AMCAP Estate.

***

Case No. 06-12644 AJC<br>
Case No. 06-12645 AJC

**Submitted by:**

Scott Jay Feder, Esquire
4649 Ponce De Leon Blvd.
Ste 402
Coral Gables, Florida
Phone: (305) 669-0060
Facsimile: (305) 669-4220

**Copy Furnished to:**

Cynthia Jackson, Esq.
Scott Jay Feder, Esq.

> ***Scott Jay Feder is directed to serve a copy of this order on all interested parties and file a certificate of service.***